ANNA VOCHT v. F. KUKLENCE AND WIFE.

| 119 | 365 |
| 211 | 235 |
| d211 | 238 |

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 7, 1888—Decided March 19, 1888.

The common law rule, that a capias ad satisfaciendum may not issue against a married woman from a judgment in an action upon a tort committed by her during coverture, is not abrogated by the Married Person's Property Act of June 3, 1887, P. L. 332.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 257 January Term 1888, Sup. Ct.; court below, No. 1 October Term 1887, C. P.

The declaration in an action of trespass by Frederick Kuklence and Augusta Kuklence, his wife, in right of the wife, against Jacob Vocht and Anna Vocht, instituted on August 8, 1887, averring. that the defendants were at the time, etc., and still were, husband and wife, charged against Anna Vocht the speaking of certain slanderous words to said Jacob Vocht in the presence of Sophia Gerlach and others of and concerning said Augusta Kuklence, laying damages at $5,000.

On October 3, 1887, an award of arbitrators had under a rule of reference was filed, "in favor of the plaintiffs for $15 with costs of suit." Judgment having been entered, on October 26, 1887, a fieri facias and a capias ad satisfaciendum were issued, whereupon the defendants filed a petition upon which a rule was granted to show cause why the judgment entered on the award should not be vacated as to Jacob Vocht, and the capias set aside as to both defendants.

On December 12, 1887, the court, SCHUYLER, P. J., filed the following opinion and decree :

In an opinion just filed we have set aside the judgment, upon which the present execution is based, as to Jacob Vocht, and it follows that the execution as to him is a nullity. The somewhat troublesome question remains whether a wife may be arrested in satisfaction of a judgment for defamatory words spoken by her during coverture in which her husband is not implicated. The Married Person's Property Act of June 3, 1887, P. L. 332, provides that damages recovered for a wife's torts "shall be payable out of her separate property and not otherwise." This provision is the natural sequence of the other provisions of the act, whose manifest purpose is to make the wife with a few exceptions, independent of her husband as respects her separate property, thus abrogating the common law rule on the subject. At common law, by marriage the wife's personal property becomes her husband's absolutely, and he acquires a life estate in her real property. The wife being thus deprived of all means to respond in damages, it was but the dictate of the merest justice that the husband should be responsible for his wife's torts. But, by the Married Person's Property Act the wife is invested with the privileges and powers of a feme sole, and it would seem but reasonable that

the husband's responsibilities should decrease in the same proportion as his rights. When, therefore, the legislature say that damages for a wife's torts shall be payable out of her separate property "and not otherwise," I understand them to mean that the husband shall not be liable for such damages, and nothing more.

At common law, husband and wife are jointly liable in damages for the torts of his wife : Wheeler v. Heil, 115 Pa. 487. But the wife's liability is not joint merely. She is personally liable for a tort committed by her, unless her husband was both personally present and directed the doing of it at the time : Franklin's Appeal, 115 Pa. 534. And both may be taken in execution : 3 Bl. Com. 414, Mr. Chitty's note. I do not discover in the Married Person's Property Act the slightest disposition on the part of the legislature to abate a jot or tittle of the wife's common law liabilities. On the contrary, the act furnishes the most pregnant reasons why wives should be held to these liabilities with a firm hand. As has just been seen the act relieves husbands of all responsibility for their wives' torts. If, therefore, the act should be construed to exempt wives with no property from liability for their torts, it will be seen that we have here a favored class with a carte blanche to commit torts ad libitum. If an unmarried woman utters a slander against her neighbor, the law compels her to answer in damages to the uttermost farthing, under the penalty of having her body taken in execution, although she may be without a friend in the world ; and shall a married woman, with a husband to protect and defend her, be permitted to utter the same slander with impunity ? Is the sting of the lying word, which sometimes kills, any more endurable because the woman, who sends the word forth on its cruel mission, happens to be able to produce a marriage certificate?

I am unwilling to believe that the legislature intended by the Married Person's Property Act to confer upon married women the privilege of sanctuary for their torts, and to abandon their less fortunate unmarried sisters to what we are accustomed to call, ironically, the tender mercies of the law. Such a discrimination would be not only without sense or reason to support it, but out of harmony with the genius of our institutions. Nor, in my opinion, does the act furnish the

slightest warrant for such a discrimination.  It expressly
provides that a married woman shall be capable of "being
sued" for her torts "in all respects as if she were a feme
sole."   Now "to sue" according to Webster, "is to seek justice
or right from, by legal process."   This definition is broad
enough to include final process, and that the legislature used
the word "sued" in its broadest sense is manifest from the ex-
pression "in all respects as if she were a feme sole" with which
it is connected.   Indeed, since the act relieves the husband of
all liability for his wife's torts, if the wife is exempted from
arrest and she has no property, the provision as to the wife's
capability of being sued would be an absurdity, if the right to
sue is limited to the service of a summons and obtaining judg-
ment.   Under such circumstances the wife and husband both
could well afford to laugh at such mummery.   The right to
arrest irresponsible persons on civil process for slander, although
often inadequate and quite as often abused, is still a most valu-
able one, and all the more valuable, because it furnishes the
only remedy that the injured party has.   The doors of our
criminal courts are closed against all such parties.   Unless the
power to arrest and punish wrongs of this nature is vested
somewhere, no man's reputation will be safe.   By the law this
power is vested in the several courts of common pleas, and it
should be exerted with an even hand against all offenders
alike, until at least we have a clearer expression of legislative
intent to create a privileged class, than that furnished by the
Married Person's Property Act.

The conclusion I reach is not in necessary conflict with
Whalen v. Gabell, 4 Pa. C. C. R. 187; all that is decided in
that case being that a married woman cannot be taken on a
capias ad respondendum in an action of slander; for there are
many cases in which a defendant may be taken in execution
after judgment, though he could not be arrested at the com-
mencement of the suit: 3 Bl. Com., 414.   The same reasoning
however which induced Judge Thayer in Whalen v. Gabell to
quash the capias, would no doubt lead to the quashing of the
present capias, and to this extent the decisions in the two cases
are in conflict.   I regret this exceedingly, but the question
upon which we differ is an important one, and, as I understand
the duties of my position, I do not feel at liberty to surrender

my conviction even to so eminent and able a judge as Judge Thayer is universally admitted to be. It is to be hoped that the question may be set at rest by an early decision of the Supreme Court.

Rule discharged.

The defendant Anna Vocht then took this writ assigning as error:

1. The discharge of the rule to show cause why the capias should not be set aside.

2. The ruling that under the Married Person's Property Act of 1887, a married woman might be taken in execution under a capias for a tort committed by her during coverture.

*Mr. Robert L. Cope,* for the plaintiff in error:

1. It is not pretended that at common law a married woman could be arrested for a tort committed by her during coverture. The authorities are all to the effect that she cannot: 3 Bl. Com., 414; Tidd's Pr., 1026; 2 Kent. Com., 149. And so in this court: Commonwealth, ex rel. McDowell v. Keeper of County Prison, 11 W. N. 341; Hawk v. Harman, 5 Binn. 45. The only apparent authority cited to the contrary is the note to 3 Chit. Bl. Com., 414, which says that a wife shall not be taken in execution when she has no separate property. But by § 28 of our act of June 16, 1836, P. L. 766, "no capias ad sat. shall in any case be executed when the defendant has real or personal estate within the county sufficient fully to satisfy the judgment." So, in either case the married woman is exempt from arrest, and such is the spirit of our institutions: Hovey v. Barb, 42 Barb. 435.

1. The Married Person's Property Act of June 3, 1887, P. L. 332, does not make a married woman liable to arrest on civil process. If a husband's goods may not be taken in execution for his wife's torts, how may his wife be so taken. Such was not the intention of the legislature: Whalen v. Gabell, 4 Pa. C. C. R. 187.; Barron v. Keeper of County Prison, 9 W. N. 314.

*Mr. James Mahon,* for the defendants in error:

1. "If the wife of her own promptings utter words and her husband is present encouraging her therein, the two are jointly

liable. . . . . It is so according to the better modern doctrine of the criminal law, and the case of a civil tort proceeds on the same ground:" Bishop. Mar. W., 261, 262. All that is urged in favor of the applicability of the capias to the wife, under the act of 1887, is that it expressly provides that a married woman shall be capable of "being sued" for her torts in all respects as if she were a feme sole.

2. It is contended that before the capias ad sat. can be made potential to coerce payment of the debt of a married woman, the legislature must authorize it. But that writ is not the creation of any statute. By statute 13 Edw. III., c. 17, the remedy by capias ad resp. was extended to actions on the case, and the courts always assumed without any statutory authority that in every action in which a capias ad resp. could issue, the plaintiff after judgment was entitled to his capias ad sat.: Freeman, Ex., § 451; Tidd's Pr., 1025 n. Therefore, if the writ is not the creation of any statute, it was not error to discharge the rule, for the words, "being sued," of the act of 1887, are broad enough to include final process.

OPINION, MR. JUSTICE STERRETT:

As stated by the learned president of the Common Pleas, the only question in this case is "whether a wife may be arrested in satisfaction of a judgment for defamatory words, spoken by her during coverture, in which her husband is not implicated?"

If the time honored principle of the common law, exempting married women from arrest and imprisonment in civil actions for torts committed during coverture, is still in force here, this question must be answered in the negative. Blackstone says: "If judgment be recovered against husband and wife for the contract, nay even for the personal misbehavior, of the wife during her coverture, the capias shall issue against the husband only; which is one of the many great privileges of English wives:" 2 Sharswood's Bl., 288. "In an action against husband and wife the husband alone can be arrested:" Tidd's Prac., 1026. "When the remedy for the wife's tort is only by suit or a fine, the husband is liable with the wife; but, if the remedy be sought by imprisonment on execution, the husband is alone liable to imprisonment. . . . . This indulgence is carried so far as to excuse the wife from punishment for theft

committed in the presence or by the command of her husband:" 2 Kent's Com. 149.

In its bearing upon the question now under consideration, the general principle thus stated by text writers, has never been abrogated or qualified by statute in this state. The act of February 8, 1819, re-enacted in 1836, P. L. 573, declaring, "No female shall be arrested or imprisoned for or by reason of any debt contracted after" its passage, was not intended to qualify the well recognized principle of exemption above stated; on the contrary, it is an extension of that principle. Nor, could any restriction or qualification of the principle have been intended by the 6th section of the act of April 11, 1848, which declared, nothing therein shall be construed to protect the separate property of married women "from levy and execution on any judgment that may be recovered against a husband for the torts of his wife." In practice, the principle exempting married women from arrest, either on original or final process in civil actions for torts committed during coverture, has always been observed. One of the most recent cases in which the question of privilege arose was, Commonwealth ex rel. McDowell v. Keeper of County Prison, 11 W. N. 341. The relator, having been arrested and committed to prison, was brought out on habeas corpus; and, it appearing she was a married woman, this court discharged her, holding that a feme covert cannot be arrested on a capias ad respondendum, where the cause of action, whether it be a contract or a tort, accrued during coverture.

Our "Married Person's Property Act" of June 3, 1887, P. L. 332, in force at the time the cause of action in this case arose, changes in some respects the legal relations of husband and wife, but it does not abrogate the principle under consideration. It provides that the wife may sue and be sued, either upon such contracts as she is thereby authorized to make, "or for torts done to or committed by her, in all respects as if she were a feme sole, and her husband need not be joined with her as plaintiff or defendant, or be made a party to any action, suit or legal proceeding of any kind brought by or against her in her individual right; and any debt, damages or costs. recovered . . . . . against her in any such action . . . . . shall be payable out of her separate property and not otherwise."

The learned judge of the court below appeared to think that, whatever may have been the common law rule as to the exemption of married women from arrest and imprisonment for torts committed by themselves during coverture, the act referred to was intended to place them upon the same plane of equality, in that respect, with their less favored single sisters. He, moreover, depicts in strong language what he conceives would be the dire consequences of a contrary construction of the act, saying among other things, that it would furnish impecunious wives " with a carte blanche to commit torts ad libitum," confer upon married women generally " the privilege of sanctuary for their torts, and abandon their less fortunate sisters to what we are accustomed to call, ironically, the tender mercies of the law," etc.

We think he is inclined to take a too gloomy view of the outlook; but, whether so or not, we fail to discover in the provisions of the act anything to indicate an intention to restrict or qualify the operation of the common law rule of exemption from imprisonment, much less to abrogate it altogether. If the new law shall prove to be productive of evil consequences, it will be the duty of the legislature to remedy its defects. It is our duty to construe, not to make the law. As was well said by the learned president of Common Pleas No. 4 of Philadelphia, " If the legislature had intended to uproot the beneficent principle of the old law, which protects a married woman from arrest and imprisonment upon a charge of slander or any other tort committed during coverture, they would have said so in plainer terms " than are to be found in the act of 1887 : Whalen v. Gabell, 4 Pa. C. C. R. 187. All that is said or intended is that she may be sued upon her contracts or torts without joining her husband and that any judgment recovered against her, for either, shall be collected from her separate property. It was never intended to subject her to arrest and imprisonment in civil cases for torts committed during coverture, or to destroy the immunity in that respect which she theretofore enjoyed.

Care must be taken not to confound the common law rule, that a married woman is liable in a civil action for torts committed during coverture, with the principle of exemption from arrest to answer, or arrest and imprisonment in satisfaction of

judgments obtained in such actions.    Two of our own cases, referred to by the court below, viz.: Franklin's Appeal, 115 Pa. 534, and Wheeler v. Heil, 115 Pa. 487, relate to the former, and have nothing whatever to do with the principle of exemption from arrest.    It is otherwise, however, as to Mr. Chitty's note to 3 Bl. Com., 414, cited and relied on by him as authority for the principle that the wife, as well as her husband, may be taken in execution, etc.    That clause of the note appears to rest upon the more than doubtful authority of a few sporadic cases nearly one hundred and fifty years old, among which are Pitts v. Meller et ux., 2 Str. 1167; Finch et ux. v. Duddin et ux., Idem 1237, and Langstaffe v. Raine et ux., 1 Wils, 149.    These cases appear to have been decided on grounds peculiar to themselves and cannot militate against the general common law principle as stated by the text writers above quoted.

We think the court below erred in discharging the rule to set aside the capias ad satisfaciendum which was issued against plaintiff in error.

> Order discharging rule to show cause reversed, and it is now ordered that the writ of capias be quashed.